May it please the court. My name is Barry Morris, and I'm the attorney for Howard Forbes. In this case, the, oh, I'd like to reserve a minute for a rebuttal. In this case, the prosecution has conceded that there was caught error, that the jury was not instructed, that the defendant has the right not to testify, and you can't draw any adverse inferences from that failure to testify. In a case where the defendant remains silent, I would put it to the court that there are two instructions that are absolutely vital to the jury's determination of whether or not the prosecution has proved this case. The first, of course, is the reasonable doubt instruction. But second, and not by very much, the second instruction that's absolutely vital to directing the jury to consider the facts is that the jury be instructed that they cannot draw an adverse inference from the defendant's case. Well, except we've said, perhaps incorrectly, that Carter error can be harmless. Carter error always occurs. I mean, Carter is always only a problem when the defendant doesn't testify. So it seems to me it's not enough just to say it's important. I agree it's important, but it can be harmless, we've said. And the State court found it harmless, applying Chapman. So get us out of AEDPA land. How do you prevail given the constraints put on us by AEDPA? Well, first of all, harmless is not a sufficiency of the evidence test, which the plaintiff No, no, but No, I understand that. The judge didn't give a Carter instruction, in this case, to the jury for closing. Gave one during voir dire. Well, no, actually, I take issue with that. What the judge did during voir dire is inform the jury that the defendant has a Fifth Amendment right not to testify. That's not the same as saying that you can't So the pre-trial instruction did not contain anything about not drawing an adverse inference from his case. Exactly. And what I'm saying is, in England, for instance, the caution that the police give an arrested suspect is that you have the right to remain silent. However, if you tell us, don't talk to us now, and then you come up with some evidence at trial, we can comment on that. Help me with the record. Tell me where I can find the pre-trial instruction. Judge, I didn't bring the voir dire with me. I had the one, actually, what I've got here is one portion of the voir dire on page We're just interested in the part where the pre-instruction was given on the adverse inference. You're saying that the court did not Well, what I have here is on page 52. It says, next, the people will offer their evidence. Evidence is usually includes witness testimony and exhibits. After the people present their evidence, the defense may also present evidence, but is not required to do so. Well, here's what I'm looking at. I'm looking at one SER005, and there seems to be a detailed instruction to the jury. The defendant has an absolute right not to testify. If the criminal defendant exercises that right and does not testify, then the jury is not to discuss it. It's not to consider it, and it's not to let the fact that the defendant testified enter into their deliberations at all. And then he goes on to describe other things. So it's more than just saying he has a Fifth Amendment right. I stand corrected. Does that change your argument at all? Excuse me? Does that change your argument? Because Judge Hurwitz had asked you whether or not the preliminary instruction regarding not to take an adverse inference mattered, and you said that wasn't given. So now that you know it was given, what's your answer? Oh, my answer is that jurors who are selected to serve as the 12 jurors are very different from the 50, 60, 70 jurors sitting in the audience waiting to do voir dire. That's not really a time when jurors pay a lot of attention. Similarly, the instruction But help me with the harmless error issue. We've said Carter error can be harmless. Supreme Court's left it open, so there's no clearly established federal law that it's not harmless. So what about this case? Tell me what makes it not harmless. Well, for example, the prosecutor twice argued to the jury that the fact that there was no response from defendant, no testimony from the defendant. He didn't say from defendant. No, he didn't. That's correct. But it's clear that that's the person he was referring to. But counsel, if you could just tell us what the record says rather than your spin on it, because they didn't use the term defendant. No, that's true. But in other words, it's like I gave the example in the reply brief of the Bruton situation where the Bruton statement, the co-defendant's statement is edited to eliminate the name of the defendant, but it says ex, and in the Supreme Court it's held that, well, come on, everybody knows who ex is. Exactly. But the fact is that it makes a difference if the prosecution actually said the defendant or implied the defendant. And so it's important for me, to me, for you to give us the facts as they exist, rather than your interpretation of it. No, I understand that. And you're right. They didn't say the defendant. They said there was one point we didn't hear any evidence as to what the defendant thought. So are the two comments that you object to the ones at ER-165 and 169? I believe that's correct, Your Honor. The prosecutor's entitled to say we put in a mountain of evidence and they didn't put in any. You agree with that, don't you? Of course. Why are these not closer to that than something that says, and the defendant never took the stand to explain it? Because there's only one possible person who could have given the testimony that the prosecution says was missing in this case, and that's the defendant. Jurors aren't stupid. They hear that and they know who the prosecutor's referring to. When you're talking about his state of mind, you say there's no witness who says his state of mind was contrary to what we've proven. There's only one person who can get up there and say, that's true. That was my state of mind. That was my state of mind. That's the defendant. So it is really blinding ourselves to the reality of the trial to suggest that the jury can't figure out from that remark exactly what the prosecution is doing. I mean, I'm doing appellate law now, but I did trial law for 30 years, 40 years. And prosecutors will come as close as they possibly can to saying that the defendant didn't testify without saying exactly that, because they know that's error. So what they do is, like the prosecutor here, is they say, and there was no evidence as to his state of mind when there's only one person who could possibly testify to it, which some courts have said, well, he didn't say it's the defendant, so therefore it's not an error. Clearly, that was the intention, and that's what was meant by it. Now, the government has said that this is harmless error because we had lots of evidence. But Carter error is not a substantial evidence. It's not substantial evidence, but it's not structural. It's not a structural error either. So we have to look to see whether or not it's harmless based on the weight of the evidence that was presented, don't we? True. But what I'm saying is that certain things aren't really amenable to the kind of detailed sufficiency of evidence analysis, I'm sorry, the light went on, as others. In this case, the idea is implanted in the jury. So for instance, the complaining witness was totally drunk. She has no memory of what happened with some of the- It's not that she had no memory. She had some memory of what happened. Correct. I was about to correct myself. I said that too quickly. But she didn't remember meeting the defendant. She didn't remember getting in the car. She didn't remember going to the house. She had bits of- She didn't remember getting sexually assaulted. Well, yeah. She remembers having sex, whether it was a sexually- Well, she said sexually assaulted. So her testimony was that she was being sexually assaulted and that she was also physically assaulted. Correct. So she remembered that. She remembered that, but not much more. And frankly, when you have a person whose memory is so impaired as to other things, the question arises, how good is that testimony in terms of being accurate reflection of what actually happened? Was there corroborating evidence, though? There was no corroborating- Medical evidence of bruising? There was corroborating evidence of bruising, and there was evidence of sexual conduct. But the essentials are there that the jury didn't know that the fact that the defendant didn't testify can't be used against them. It's a constitutional privilege that is not waived by substantial evidence. And I think that- But what do we do with the absence of objection in a case like this to the final jury instructions? It always troubles me because I assume the judge before trial said, of course, I'm going to give that instruction. Actually, what happened is the judge volunteered that he was going to give that instruction. Yes. The defense hadn't asked for it. But inadvertently omitted it. Correct. We're human. It happens. Of course. I'm not- I'm just trying to figure out what to do because, like you, I haven't tried thousands of them, but I've been there. If you say to the judge, oh, judge, you didn't give the adverse inference instruction, every judge in the world would say, oh, my God, you're right. Let's call, you know, let's call those 11 people back in here and give them the instruction. Nobody below, you probably don't have to defend on this basis. The state court didn't find that there was some higher burden on you because you didn't object to trial. But what do we, I just don't know what we're supposed to do with that in a case like this. Well, unless you find that the error, the verdict was surely unattributable to the instructional error, you have to reverse. It's surely unattributable, not, well, there's a lot of evidence. What case is that? Sullivan versus Louisiana, from that noted liberal, Antonin Scalia. You said the error must be surely unattributable? Correct. That's Sullivan versus Louisiana. I don't know the citation offhand. It's in my brief. But yes, no, that's, it's one of those cases which is not long in words, but really goes to the heart of the matter, the way Scalia really was able to do. So you're saying Sullivan versus Louisiana says that the conviction must be surely unattributable to the error? Exactly. Exactly. I'm just trying to get your argument. I know. I appreciate that, Your Honor. Well, it looks like I've gone a little over my time. You've gone well beyond your time. But we'll give you a minute for rebuttal. OK, thank you very much, Your Honor. Thank you, Counsel. Good morning. Good morning, Counsel. Gregory Ott for Respondent. Kelly, if I could just address that last point first. Chapman is the standard. Let me clarify that, actually, it's not just Chapman. It's whether any fair-minded jurist could agree with the state court's Chapman conclusion. Well, there's actually two levels here. Your first line of defense is Chapman, which is to say we have to find that the California court's Chapman determination was unreasonable. Even if we do, we have to then move on to a Brecht analysis to determine whether or not there was an injurious effect on the verdict, right? Agreed. So deal with the first one for me and tell me why we have to conclude that it was the work of reasonable jurists other than their identities. Well, if I Because we can't use their identities. I will, but I do disagree with the characterization of Sullivan, if I could, at the outset. Well, that's what I was trying to take you to. Sullivan is a Chapman test, yes? Frankly, I can't remember what Sullivan says, but I do remember what Chapman says. And I do remember I wanted to talk about Sullivan, so obviously you don't want to talk about Sullivan. Well, no, that's right. What I mean is Chapman is the test, regardless of Sullivan. And what I was going to point to, because there's a lot of talk about, well, this isn't a sufficiency of the evidence question, this court in United States v. Soto found Carter error harmless solely on the sufficiency or strength of the evidence. There's no special rule about what the jury did or did not find. In fact, this court was just talking about Nieder in the prior case. I think Nieder really turned the tide on what harmlessness means. And it doesn't ask the question of what the jury, in fact, did or what the jury, in fact, considered this. It's the whole record and what would have happened in the absence of the error. Now, I'd like to talk about the voir dire instructions first. As the court pointed out, and you're right, I have it at 1 SCR 05. A Carter instruction, if I can call it that, in short, was given in great detail to the prospective jurors. This court in United States v. Castaneda found that, and if I think I'm quoting says in light of the compelling evidence, the fact that they gave a Carter instruction to the jury in voir dire renders this harmless. Yeah, and the reason you haven't mentioned Sullivan, I finally pulled it up, is Sullivan finds that a constitutionally deficient reasonable doubt instruction is not amenable to harmless error review. And so it's not dealing with a harmless error analysis. OK, thank you. What I believe Castaneda stands for, it's not clearly established, but it shows that three fair-minded jurists believe, A, that you can consider. Well, but that's always true. See, that's my problem. If three people, we always get something from the state court, almost always get something that's unanimous. And so our test isn't whether or not there were three reasonable people looking at this. Our test is an objective one. Could that mythical reasonable man or reasonable jurist reach this conclusion? We can't decide the case simply because there were three reasonable people in the California court that looked at it. No, Your Honor, I'm talking about Castaneda. This court in Castaneda found that. Right, but we were looking at a different record, were we not? Yes, but my point is. So what is there about this record that compels the conclusion that any error must have been harmless? The very same instruction. A Carter instruction was given in detail. And the state court considered that as part of the harmlessness finding. Now, and there's some argument that, well. Yeah, I guess I keep trying to direct you back to this case. Tell me why, in this case, the error was harmless. It can be harmful in some cases. It can be harmless in others. We know that from reading the cases that everybody cited. Tell me why, in this case, it was reasonable for the California court to find that the error was harmless. OK, the first point was just the one I just made, which was the Carter instruction was covered in voir dire. Second is the evidence against Forbes was very strong. This victim's testimony was detailed and emotional. Now, there were things that she couldn't remember because she was intoxicated. But that was thoroughly vetted. She admitted when she was drunk. And the convictions weren't based on things that she didn't know about because she was drunk. They were based on things that she testified to that happened after she awoke. You know the record better than we, I hope. At least better than I. What did the state present other than the testimony of the victim? Other than the testimony? There was some physical evidence of bruising, I take it. There was extensive. Was that presented through the victim or through someone else? Oh, that was presented through the physicians. Well, she underwent a couple of exams. She went to a sex assault exam. And then there was testimony when she first went to the hospital, I believe, for, well, I guess, an entry to the hospital, an entry exam. And I don't think there's any contest on this record. Indeed, the defense argument was it was consensual sex. So there isn't any doubt that the victim and the defendant had sex. I'm trying to figure out what evidence is there in this record that might corroborate her story that it was non-consensual. Well, her hysterical state when she was found was testified to by an officer who found her and an employee of the fast food restaurant. Statements, spontaneous statements she made to responders and the employee that she had just been raped. She was hysterical. So there were prior consistent statements in the record? Yes. Testified to by other people. That's what I was asking. And then extensive physical injuries. This wasn't rough sex. This was a beating. She had, as the magistrate described it, head-to-toe injuries. Not to be graphic, but rough sex might explain the genital injuries, which she also had, but not this beating. She had swollen face. She had scratches, bite marks, you name it. But it's detailed in the record there. The jury saw photos of all these injuries. There were great bodily injury findings that went along with them. She had no motive to lie. That was explored. There really wasn't anything anyone could come up with. She endured a tremendous amount. And I take it on this record, I, again, don't know it as well as you. But I take it the victim said she did not know the defendant until this occurred? That's correct. They were not previously acquainted, I guess, is the better way to put it. Right. In fact, she didn't remember much of that. So even if she didn't remember the incident, she did have a memory of things that occurred prior to the incident and remembered that she didn't know this guy. She blacked out. And when she awoke, really the offenses have to do with what she testified to after she awoke in his house. Now, she also testified to Mr. Forbes' statements, which did come through her, but they were also corroborated some of the things she had said. For instance, him saying a couple of times not to make him mad. He apologized to her afterwards that he had beaten her. And also a statement that when he ripped a Nuva ring out of her that, how dare you come in here with birth control and refuse to have sex with me. There was also video, was there not? There was actual video. There was a video. The video didn't much corroborate, well, it certainly corroborated identity, which really wasn't an issue. But there was a video on his phone of some sex act. And the comments, if I can address those. The last thing on the corroboration was, and to a lesser extent, admittedly, was the propensity evidence. He had forced himself on a woman who was in a, he had locked the door and forced himself on her, which bears some similarities to this case. Not exactly the same, but still relevant and corroborating. See, I'm running out of time here, but the prosecutor's comments, I'd like to comment on the first one. He says, or she said, the evidence was uncontradicted. Now, only Forbes could have supplied the contradiction. I admit that. However, and under this court's circuit law, that could be deemed prohibited. However, under the clearly established Supreme Court law, that's not necessarily problematic. And the reason I say that, I realize there isn't a Griffin claim here, but we're still, at least in the first round, analyzing it under Chapman, under ADPA. And so to the extent there's some claim that, well, the state court's opinion in toto was unreasonable because of that comment, I'd like to point out that, well, no, not necessarily. That comment didn't necessarily contravene any clearly established law. It also was harmless for similar reasons. That is, it was brief, it was indirect, no mention of Forbes, no mention of him not testifying. Trial counsel apparently sensed no impropriety because there was no objection to that, and that's never been challenged. And I think it was also offset. I take it the state court decision that we're reviewing for reasonableness doesn't turn on the absence of an objection. No, Your Honor. In other words, if the state court had said, you know, you have even a higher burden because there was no objection, but it didn't say that. No, Your Honor. And going to that question that you had asked, it's always been a conceded Carter error, and the state court did not find any procedural problem. And my point, I should say, about counsel not objecting and implicitly not sensing any impropriety has to do with... But you think it's some evidence that maybe this wasn't improper? Well, that it wasn't glaring, at least. It didn't stand out to him. And he would have been unnoticed thinking about that because he's the one who requested the Carter instruction to begin with, which is not a sua sponte obligation. I thought that... Oh, you mean the judge? The judge was the one who mentioned the Carter instruction originally. The defendant did not request one. The defendant did not. Yes, but the judge did mention it. The judge brought it up, but then the defendant, when he offered it up to him, said, yes, I would like that. Of course. But that's different than saying that the defendant offered it. Apparently he never thought about it at all, which is part of the problem. If he had, he would have had one. The second comment, if I could... You're over your time, so if you could just wrap up quickly. Okay. The second comment I don't believe was Griffin at all. In fact, I think it cut against the prosecution. He says that there's no evidence of what he thought. In fact, all these offenses were proven by circumstantial evidence of what he thought. So it's a little inexplicable. The magistrate believed it was more of a global comment. I think it's also very confusing. It just doesn't constitute Griffin error. My last point would just be if any fair-minded jurist could agree with the state court's opinion that this should be affirmed. Thank you, counsel. Thank you. One minute for rebuttal. First off, in a state in California, you don't have to object to an instruction in order for it to be considered on appeal. So that's why the lack of objection was never litigated. Secondly, the Griffin error, the Griffin referred to as indirect Griffin error... Your argument is not that there was a Griffin error, but that these comments highlighted his failure to testify. Right, and it doesn't have to be clearly established Supreme Court law, because that's not necessary to get into court on federal habeas. The Carter error is a violation of clearly established... But you do agree that Sullivan doesn't deal with this situation. That's what I'm getting to next. Yes, it does. If you take a look at Sullivan, Sullivan discusses the reasonable... the Chapman standard. In other words, in that case, there was a problem with the reasonable endowment instruction, but the analysis in Sullivan was much broader than that, because it talked about what harmless error is and what's necessary to prove it when it's constitutional error, and that's where the surely unattributable phraseology comes in. Right. But the holding of the case is that a reasonable endowment instruction can never be harmless. The failure to give a reasonable endowment instruction... Right. ...Sullivan holds can never be harmless. Right. And Justice Scalia's discussion of Chapman along the way is not necessary to the conclusion. What I'm saying is applicable to this case as well. I was going to say, but it tied into the facts of that particular case, and so it's not necessarily that it applies to every case, but it applied to that particular case based on the facts of that case, and that's what Judge Hurwitz has been asking, as applied to the facts of this case. With all due respect, I don't think it's limited to the facts of that case. Well, that's specifically what it said on page 279. The inquiry, in other words, is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the errors. Right. So it's pinned to that trial. No, in this trial, meaning that's the trial that's before him, but it doesn't mean that that analysis is not applicable to other cases. It may or may not be, but we have to look at the particular case. Trial, to say that it's not across the board. Well, he's explaining what harmlessness and... Okay. We understand your argument. Was there anything that you wanted to tell us? I'm not going to belabor anything else. Okay. That's it. Thank you very much, Your Honor. Thank you to both counsel for your helpful argument. The case just argued is submitted for decision by the court. The next case on calendar for argument is Mendoza v. Cate.
judges: RAWLINSON, HURWITZ, Cardone